RUTH DOCKRAY, PLAINTIFF, v. SECURITY MUTUAL LIFE INSURANCE COMPANY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided July 11, 1952.

Messrs. *McGlynn, Weintraub & Stein* (*Mr. Edward R. McGlynn* on the argument), attorneys for plaintiff.

Messrs. *Stryker, Tams & Horner* (*Mr. William L. Dill, Jr.,* on the argument), attorneys for defendant.

COLIE, J. S. C.  This matter comes before the court on plaintiff's motion for a new trial under *Rule* 3:59–1 on the ground that the court erred in dismissing the complaint and entering judgment for defendant at the end of the defendant's case.

The plaintiff sued to recover damages for personal injuries sustained on February 8, 1950 in the apartment rented by

her in the building owned by defendant. The apartment was equipped by the defendant with an ice-box. The compressors which supplied the sulphur dioxide gas to the boxes and the connecting pipes between the boxes and the compressor were in the exclusive control of defendant. The sulphur dioxide gas was supplied to the boxes from the compressor by risers to the ten floors of the apartment house, laterals going off to the individual boxes. Within each box is a mechanism known as an evaporator which is controlled by a thermostat and through the coils of which pass the sulphur dioxide gas which, in so doing, provides the necessary refrigeration. During the night of February 8, 1950, gas escaped into plaintiff's apartment, was inhaled by her and injured her so that, it is alleged, she was moribund for some period of a five-week hospitalization. At the conclusion of the plaintiff's case, a motion for dismissal was denied, the court holding that the doctrine of *res ipsa loquitur* applied and that the defendant was under the duty of explaining the occurrence or take its chance that the jury would not infer negligence on the part of the defendant from the presence of the unconfined gas in plaintiff's apartment.

The defendant's evidence may be epitomized as follows: the evaporator was within the ice-box, in the apartment of plaintiff; that on February 8, 1950 when examined by the witness Weinberg (an employee of the company which held a contract to service the refrigerating system in the apartment house) there was a yellow spot on the white ice which had formed about the rear coil on the evaporator. An examination of the coil, made when the ice had melted two days later, revealed a hole through which the gas had escaped. This witness testified that when he arrived at the plaintiff's apartment in response to a call from the superintendent at about 4:45 A. M., he found the door of the ice-box open about three inches, that it could not be shut because of the accumulation of ice on the front of the evaporator, that he knocked the ice off with a wrench, shut off the gas and returned about 10:30 A. M. and removed the evaporator, using

wrenches but not a screw-driver. He thought the hole was made by a knife. The witness Cyphers, called as an expert and with 26 years' experience in refrigerating, testified that the mark on the ninth tube of the coil of the evaporator was due to a puncture made from the outside. He also testified that he was experienced in sulphur dioxide gas and characterized it as harmless. On rebuttal, the plaintiff testified that she had no ice-pick, screw-driver or blunt instrument similar to one in her apartment, and specifically denied puncturing the tube. She admitted that ice formed on the evaporator to the extent of interfering with removal of the ice-trays but never to an extent that prevented closing the ice-box door. This summary of the evidence in a protracted trial is necessarily incomplete but embodies the gist of the testimony sufficient for a decision of the pending motion.

"The instrumentality or thing causing the mischief must be shown to have been in all probability an agency under the sole control of the defendant, his employees or agents." *Kramer v. Hollingshead*, 5 N. J. 386 (1950). There is no difficulty with the fact that the cause of the mischief was the refrigerating system, from the compressor in the basement, through the risers, the laterals, the evaporators and the return lines to the compressor. Nor is there doubt but that all parts enumerated were under the sole control of the landlord, excepting only the evaporator. As to it, the defendant recognized its duty to keep it in repair, when, both prior and subsequent to February 8, 1950, it sent men to examine into the complaints of tenants. In fact, the very evaporator here involved was a replacement put into the box about a year before the accident. Assuredly the plaintiff had no right, by reason of the presence of the ice-box and evaporator in her apartment, to tinker with it. The fact that the defendant furnished 24-hour service bespeaks the contrary. Did the presence of the evaporator take it out of the "sole control" of the defendant? I think not. There is essentially no difference between the refrigerating system here involved and a heating system with the radiators which are

customarily to be found in apartments of tenants. The evaporator was the property of the defendant, it had the sole right to make repairs, replacements or adjustments. How, then, can it be said that it had lost "sole control"?

There is no question that where the situation calls into play the doctrine of *res ipsa loquitur* there arises, in the absence of explanation by the defendant, *prima facie* evidence of negligence. *Mumma v. Easton & Amboy R. R. Co.,* 73 *N. J. L.* 653 (*E. & A.* 1906). From this premise the plaintiff argues that "once it is determined that *res ipsa loquitur* is applicable, the case must go to the jury since the doctrine creates *prima facie* evidence of negligence." The plaintiff's statement is too broad. Where the maxim comes into play, the case need not necessarily be sent to the jury. The defendant's evidence offered in explanation or exculpation may be so strong as to convince the trial judge that reasonable men could not doubt that the explanation or exculpation met and overcame the inference of negligence which it was within the province of the jury to draw in the absence of explanation. In such a situation, the trial judge must take the case from the jury. On the other hand, if the defendant's explanation leaves the case in the situation that reasonable men might not agree that the proffered explanation overcame the permissible inference that the jury might draw, then the court must leave the question with the jury for its decision. A typical example in which the above statement of the mechanics of operation where *res ipsa loquitur* was invoked is *Law v. Morris,* 102 *N. J. L.* 650 (*E. & A.* 1926).

We are necessarily brought back to answer the question as to whether or not reasonable minds might differ on the question of whether the inference of negligence had been overcome. Inextricably tied into this question arises a subsidiary one which cannot be side-stepped. Must the court accept the explanatory evidence in its entirety, even though doubt has been cast upon the credibility of one or more of the witnesses offered by the defendant? In the case under

consideration, the witness Weinberg testified to facts which were flatly denied. Had the case gone to the jury, the question of credibility would have been for the jury to have passed upon. They may or may not have believed his testimony, in whole or in part. In granting defendant's motion, the court accepted as true all evidence of the defendant. In so doing, the court fell into error. In *Flexmir, Inc., v. Lindeman & Co.*, 4 *N. J.* 509 (1950) the Supreme Court, in reversing the granting of a dismissal at the close of plaintiff's case said, with reference to the plaintiff's evidence, "whether this testimony was to be accepted as true or not and whether or not these legitimate inferences were to be resolved in the appellant's favor were questions for a jury and not for the court."

The motion for a new trial is granted. No costs are allowed.